WESTERN UNION TELEGRAPH COMPANY *v.* WENISKI.

84   457
e88   502

Opinion delivered November 25, 1907.

1. TELEGRAPH COMPANY—DAMAGES FOR MENTAL ANGUISH—EXCESSIVENESS.
—A verdict allowing a sister $1,354 for a failure of a telegraph company to deliver a telegram which would have apprised her where her brother was to be buried was excessive where her only deprivation on account of non-delivery of the telegram was in not attending the brother's funeral.   (Page 458.)

2. SAME—DUTY IN TRANSMISSION AND DELIVERY OF MESSAGES.—A telegraph company owes a duty in the transmission and delivery of messages only to persons of whose beneficial interest in the telegram the company receives information from the face of the telegram itself or from other sources.   (Page 459.)

3. SAME—LIABILITY FOR SPECIAL DAMAGES.—A telegraph company is liable for special damages for negligent failure to transmit or deliver telegrams only where notice of the facts which give rise thereto is received either from the face of the telegram or from other sources.   (Page 459.)

4. SAME—NOTICE OF SPECIAL DAMAGES.—A night operator receiving a message at night will not be charged with notice of other messages passing through the office in the day time when an entirely different force of men were at work, without proof of actual knowledge on the part of the night operator of the contents of the day messages.   (Page 459.)

Appeal from Pulaski Circuit Court; *Edward W. Winfield,* Judge; reversed.

*Geo. H. Fearons* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1. A stranger to a telegram cannot recover for special damages suffered because the telegram was not promptly de-

livered, in the absence of notice to the defendant that such stranger had an interest in the telegram, and notice of the facts that would give rise to the special damages.  26 S. W. 783; 9 Tex. App. 607; 27 S. W. 51; 29 S. W. 406; 13 S. W. 70; 20 S. W. 945; 57 Fed. 471; 107 Ky. 518; 51 Mo. App. 375.

2.  Under the circumstances of this case, appellee's own negligence is sufficient to bar recovery.  140 Fed. 315; 80 Tex. 420; 88 Tex. 230; 67 S. W. 849.

3.  The verdict is clearly excessive.  76 S. W. 456; 28 Tex. Civ. App. 23; 92 Tenn. 694.

*Marshall & Coffman,* for appellee.

1.  It is almost uniformly held that telegrams similar to the three in this case, all of which are to be taken together, are sufficient to give notice of special damages, and that notice of the exact relationship is unnecessary.  123 N. C. 129; 109 N. C. 527; 124 N. C. 528; 12 S. W. 857; 47 S. W. 676; 40 S. W. 1035; 16 S. W. 25; 82 Tex. 539; 75 Tex. 537; 123 Ind. 294; 85 Tex. 580; 76 Tex. 66; 19 S. W. 898; 39 S. W. 721; 91 S. W. 312; 90 S. W. 677; 57 S. E. 725; 52 S. W. 102; 78 Ark. 551; 80 Ark. 559.

2.  The question of negligence on the part of appellee was fairly submitted to the jury under the evidence and proper instructions of the court.  Their verdict is conclusive on that point.

3.  There is ample authority for sustaining the verdict as not excessive.  102 S. W. 366; 73 S. W. 79; 25 S. W. 722; 23 S. W. 998; 81 S. W. 1052; 10 S. W. 734; 33 S. W. 708; 60 S. W. 982; 58 S. W. 118; *Id.* 428; 48 S. W. 770; 26 S. W. 866; 16 S. W. 25.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant in reply.

It would carry the doctrine of imputed notice to the verge of absurdity to hold that, in telegraph offices in cities the size of Toledo, Ohio, and Little Rock, Arkansas, maintaining separate day and night operators, an operator on one force would be chargeable with notice of the contents of a message sent or

received by an operator on the other force. That rule is never invoked except where it is reasonable to presume that the information obtained by the agent would be communicated to the principal. 4 Md. 231; 22 Barb. 54; 33 Beav. 178. See, also, 1 Am. & Eng. Enc. of L., 1145.

McCULLOCH, J. This is an action to recover damages alleged to have been caused by the negligent failure of defendant's employees to promptly deliver a telegram from her father in Toledo, Ohio, addressed to her sister in Little Rock, Arkansas, which was intended to inform plaintiff of the place of burial of her brother, so that she could attend. She alleged in her complaint that, by reason of being thus prevented from attending the funeral of her brother, she suffered mental anguish to her damage in the sum of two thousand dollars.

The jury awarded her the sum of $1,354, and the defendant appealed to this court.

Plaintiff's father, Valentine Weniski, and her brother, John, lived in Toledo, and she lived in Little Rock with her widowed sister, Mrs. Joe Schmelzer. John Weniski died in Toledo on December 7, 1905, and his father immediately sent the following telegram over defendant's wire to Mrs. Schmelzer: "John is dead; died at 12 A. M." This message was promptly delivered to Mrs. Schmelzer in the early part of the afternoon on the same day, and she immediately filed with employees in charge of defendant's office the following message to her father: "Shall Clara come or do you wish to bring John here? Answer at once. [Signed] Lula." Her father sent in reply the following message, addressed to Mrs. Joe Schmelzer: "If you can, come at once, Clara. [Signed] Pa." This message was not ·delivered at all, and damage is claimed on account of the omission. This was on Friday night, and plaintiff's brother was not buried until the following Monday. It is shown that she would have traveled from Little Rock to Toledo in about twenty-four hours.

We deem it proper to say in the outset that the assessment made by the jury of damages so grossly in excess of the amount warranted by the evidence, if the plaintiff is entitled to recover any damages at all, calls for a reversal of the judgment, regardless of any other error in the proceedings. The ele-

ment of mental anguish allowed by the statute in the assessment of damages for non-delivery of a telegram is so indeterminate in its nature that it must be left to some extent to the sound judgment of the trial jury, but there is a limit to the power and discretion of the jury in that respect, and it becomes our duty to set aside an assessment which is palpably excessive. We think the verdict in this case clearly presents such a situation.

Plaintiff's brother was a full-grown man about twenty-five years of age, and he and plaintiff had not resided together for several years. He lived with his father in Toledo, and plaintiff lived with her sister in Little Rock. Her father and his friends in Toledo looked after all necessary arrangements for the funeral, and she had no duty to discharge in that respect, so there could have been no humiliation resulting from an omission to provide such arrangements as were suitable to show proper respect for the memory of the dead. Her only deprivation on account of the failure to deliver the telegram was the melancholy pleasure of attending the funeral of her deceased brother and the satisfaction of having fully discharged her duty to the dead. It may be that such a bereavement produces mental injury, distinct from that resulting naturally from the death of a brother or other loved one, which would justify the assessment of some pecuniary compensation, but we feel sure that a far less sum than that assessed by the jury in this case would, under the circumstances shown by the evidence, be sufficient to afford full compensation to the plaintiff for her injury in this respect.

We are unwilling, therefore, to permit this verdict to stand, even if no other error was found in the record.

The defendant requested the court to give the following among other instructions to the jury, which was refused:

"5. If you find from the evidence that a message was sent from Toledo, Ohio, addressed to Mrs. Joe Schmelzer, 1000 Barber Avenue, Little Rock, reading: 'If you can, come at once, Clara,' signed 'Pa,' and that this message was not delivered through defendant's negligence; and you further find that, had said message been promptly delivered to Mrs. Schmelzer, plain-

tiff would have gone to Toledo, and would have attended the funeral of her brother, still said message does not on its face show either that plaintiff's brother would be buried in Toledo, or that the message was for the purpose of enabling plaintiff to attend his funeral; and, unless you further find that defendant was notified that this was the purpose of the message, she is not entitled to recover for any mental anguish she may have endured because she was prevented from attending her brother's funeral, and your verdict will be for the defendant."

The court erred in refusing to give this instruction.

A telegraph company owes a duty to the transmission and delivery of messages only to persons of whose beneficial interest in the telegram the company receives information from the face of the telegram itself or from other sources; and it is liable for special damages only where notice of the facts which give rise thereto is received either from the face of the telegram or from other sources. *Western Union Tel. Co.* v. *Raines,* 78 Ark. 545; *Western Union Tel. Co.* v. *Schriver,* 141 Fed. 538; *McCormick* v. *Western Union Tel. Co.,* 79 Fed. 449; *Morrow* v. *Western Union Tel. Co.,* 107 Ky. 518; *Western Union Tel. Co.* v. *Bell* (Tex.), 90 S. W. 714; *Western Union Tel. Co.* v. *Adams,* 75 Tex. 531; *Western Union Telegraph Co.* v. *Kirkpatrick.* 76 Tex. 27, 13 S. W. 70.

The message which defendant's agents failed to deliver did not on its face disclose facts leading to information of any special injury to plaintiff by reason of non-delivery; hence the jury should have been so told.

Nor could this message, which was received at defendant's office in Little Rock at night, be connected with the other messages passing through the office during the day time when an entirely different force of men were at work, without proof of actual knowledge on the part of the persons through whose hands the last message passed of the contents of the earlier messages. It would be carrying the doctrine of imputed knowledge too far to say that each agent of a telegraph company must in all cases be charged with notice of what other agents have knowledge. Of course, it would be different when both messages were handled

by the same agent or operator. In such case the company would be chargeable with information which both messages, taken tother, would afford. *Erie Tel. Co.* v. *Grimes,* 82 Tex. 89; *Herron* v. *Western Union Tel. Co.,* 90 Iowa, 129. But in a city office where there are many employees working during different hours, and where it would be impracticable to devise a system whereby each employee could be conveniently given notice of all the business which passes through the office during the day, it would be not only unreasonable but very unjust to the company to charge each employee with constructive knowledge of the contents of all messages. For all practical purposes it would be no more unreasonable to charge a night operator or agent in the Little Rock office with information of the contents of a message passing through the New York office than to charge him with information of a message known only to a day operator or agent in the same office.

There are other assignments of error; but, as those already discussed call for a reversal, it is unnecessary to pass upon others.

Reversed and remanded for a new trial.